Brinkerhoff, C. J.
It is proper that I should say, in the first place, that neither in the pleadings in these cases, nor in the argument of them, is there any imputation, or insinuation even, of any want of perfect good faith on the part of either the trustees or other party to the proceedings. The questions made are questions of law, and of state policy, as indicated and declared by the law, and as such they are to be decided.
The act of April 3,1868 (S. & S. 637), the provisions of which, it is conceded on all hands, govern this case, provides as follows:
“ Sec. 3. That after such plans, descriptions, bills of material and specifications and estimates as are in this act required, are made and approved in accordance with the requirements of this act, it shall be and is hereby made the *107 duty of such directors, trustees, or other officer or officers to whom the duty of devising and superintending the erection, adding to, alteration of improvement of such institution, asylum, or other improvement, as in this act provided, to give or cause to be given public notice of the time and place when and where sealed proposals will be received for performing the labor, and furnishing the materials necessary to the erection of such institution, asylum, or other improvement, or for the adding to, altering, or improvement thereof. And a contract or contracts, based on such sealed proposals, will be made, which notice shall be published weekly for six consecutive weeks next preceding the day named for the making of such contract or contracts, and in four or more daily papers having the largest circulation in the State, and shall state when and where such plan or plans, descriptions, bills, and specifications can be seen, and which shall be open to public inspection at all business hours between the date of such notice, and the making of such contract or contracts.
“Sec. 4. That it shall be competent for such directors trustees, commissioners, or officer or officers, if for any cause they fail to make the contract or contracts, as herein provided for, on the day named in the notice, as in this act required, to continue from day to day until such coutract or contracts are made; provided that such contract or contracts shall be a/warded to and made with the person or persons who shall offer to perform the labor and furnish the materials at the lowest price, and give good and sufficient bond for the faithful performance of their contracts, in accordance with the plan or plans, descriptions and specifications herein required ; which plan or plans, descriptions or specifications, shall be and are hereby made a part of such contract or contracts • and provided further, that such contract or contracts shall not be binding on the State until they are submitted to the attorney-general, and by him found to be in accordance with the provisions of this act, and his certificate thereon to that effect made.”
By scanning the foregoing statement of facts, it will be seen that the proposals called for by the advertisement and *108 specifications under which the parties hereto claiming the contract acted, were for the carpenter and joiner work alone; proposals for furnishing all hardware for the building being called and advertised for as a separate item; and this fact was open to the knowledge of all persons who might be doubtful in respect to it, and chose to make inquiry.
Taking the proposals of the parties respectively, as each appeared upon its face at the time when they were opened and their contents disclosed to the commissioners and the public, the proposal of Griffith & Son- was the lowest, and that of Beaver& Butt next. Griffith & Son, on the face of their proposal, expressly exclude the items of hardware to be used in connection with doors and windows. The proposal of Beaver & Butt is silent on that subject. But Beaver & Butt now come in and say, that, acting on the mistaken supposition that the furnishing of the necessary hardware for the doors and windows was to be included in the proposal to do the carpenter and joiner work of - the doors and windows, they did in fact mentally include the cost of such hardware, amounting in all to $2110.20; which sum, if deducted from the aggregate of their proposal as it stood, would result in making their proposal lower than that of Griffith & Son; and this claim of mistake on their part by Beaver & Butt is admitted by the trustees of the institution'for the blind, in their answer, to be true. And it is insisted that this admission is conclusive against them, and in. favor of Beaver & Butt. We cannot accede to this proposition. Looking to the letter and the policy of the statute under which the proceedings were had, we are of opinion that it was not competent for the trustees to bind themselves officially, or the State whose interests they represent, by such an admission. The proposals-are to be in writing, and sealed ; and the action of the trustees is to be taken on the basis of what those proposals are found to be when opened, and not on what they may have been intended to be, but are not. To hold' otherwise would, be to nullify or reverse the evident policy of the statute, and to render possible and easy- the exercise of such favoritism by the trustees towards particular parties as it is the obvious policy and intention of the statute to render im *109 possible. “The contract or contracts shall be awarded to and made with the person or persons who shall offer to perform the labor and furnish the materials at the lowest price” How offer to perform and furnish ? Through the medium of written, sealed proposals, filed within the time limited in the advertisement. The statute knows no other proposals or offers but these. The trustees are invested with no discretion in the matter; but, on the contrary, we are satisfied it is the intent and policy of the statute to withhold it, and thereby shut the door against all favoritism on the part of the trustees on the one hand, and, .on the other, to prevent such an excited, intriguing, and perhaps ruinous scramble among builders, as would be not unlikely to ensue if the proceeding were assimilated to an open auction sale of contracts. By the provisions of this statute, the State has declared her policy to be — to rely, for procuring the labor and materials for her public buildings at a reasonable price, upon the secret, sober, and unexcited estimates, inquiries, and calculations of individual builders, made with full knowledge that others are likely to be similarly engaged, and upon the provision made in the seventh section of the act, to the effect that no contract for labor or materials shall be made at a price in excess of the detailed estimates previously made by the official engineer.
And though an inquiry whether this policy is a wise or an unwise one is not necessarily an element in the question before us, yet it may not be improper for me to say, that the near approximation to the same aggregate amount exhibited by the several proposals in these casés, indicates that the several bidders have made careful and close calculations, and that the provisions and policy of the statute, if - faithfully carried out, are likely to eventuate in results fair and beneficial both to the State and to the parties with whom it may contract.
In what has thus far been said, however, we do not intend to be understood as holding that a mistake in a proposal may not be rectified in case the fact of mistake and the requisite data for its rectification are both apparent upon the face of *110 the proposal; as if, for instance, Beaver & Butt had expressly named in their proposal the items of hardware for doors and windows, with prices annexed, or if a mistake in their arithmetic was detected: in all sitch cases we think the mistake may and ought to be rectified. It would be but just to the bidder, and would in no way contravene the provisions or the policy of the law.
We are of opinion that Beaver & Butt are not entitled to the contract which they claim ; and if they are not, then, a fortiori, Janes, Morton & Co. are not.'
A peremptory mandamus will he issued in favor of Griffith & Son for the awarding of the contract to them on the basis of their proposal, as it will he, after correcting the mistake in the extension of figures to the. amount of $140, apparent on its face.
Scott, White, and Day, JJ., concurred.
Welch, J., dissented.